FILED
United States Court of Appeals
Tenth Circuit

November 6, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JIMMY EUGENE RHODES,

    Defendant - Appellant.

No. 20-6012
(D.C. No. 5:01-CR-00202-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Jimmy Eugene Rhodes was convicted of federal crimes in district court in

Oklahoma. A district court in Illinois granted his pro se application for a writ of

habeas corpus under 28 U.S.C. § 2241 and ordered that Rhodes be released. That

order also purported to vacate his sentence and order the Oklahoma district court to

resentence him. Rhodes then moved the Oklahoma district court to release him

pending his resentencing. The Oklahoma district court denied his motion for release,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

concluding that the Illinois district court lacked jurisdiction to grant his § 2241 application. It also declined to vacate his sentence and to resentence him, holding that the Illinois district court lacked authority to order the Oklahoma district court to do either. Rhodes has since been released from custody pursuant to the Illinois district court's § 2241 order. Appearing pro se, he appeals the portion of the order refusing to vacate his sentence and resentence him. We affirm.

## Background

### 1. Rhodes' Conviction, Direct Appeal, and First § 2255 Motion

In 2002, Rhodes was convicted in the Western District of Oklahoma (Oklahoma district court) of firearm and drug offenses, including two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was subject to a mandatory minimum fifteen-year sentence for the felon-in-possession convictions under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on his having at least three prior state convictions that qualified as violent felonies, one for shooting with intent to kill, and two for second-degree burglary, all out of Oklahoma. The Oklahoma district court sentenced him to concurrent 260-month terms for the felon-in-possession counts and shorter concurrent terms on the remaining convictions.

On direct appeal, Rhodes challenged his convictions but not his sentence. We affirmed. *United States v. Rhodes*, 62 F. App'x 869, 876 (10th Cir. 2003) (*Rhodes I*). Rhodes then filed his first 28 U.S.C. § 2255 motion. He alleged ineffective assistance of counsel but again did not challenge his sentence. The Oklahoma district

2

court denied the motion and we denied a certificate of appealability (COA). *United States v. Rhodes*, 157 F. App'x 84, 89 (10th Cir. 2005) (*Rhodes II*).

### 2. Denial of Rhodes' Authorized § 2255 Motion Based on *Johnson*

In 2016, we granted Rhodes authorization to file a second or successive § 2255 motion based on *Johnson v. United States*, 576 U.S. 591 (2015), in which the Supreme Court held the definition of "violent felony" in the ACCA's "residual clause" was unconstitutionally vague such that enhancing a sentence based on that clause violates a defendant's right to due process, *id.* at 596, 606. *Johnson* did not invalidate the remainder of the ACCA's definition of violent felony, including its "enumerated offense clause," which defines violent felony as "burglary, arson, or extortion, [or an offense that] involves [the] use of explosives," 18 U.S.C. § 924(e)(2)(B)(ii). *See Johnson*, 576 U.S. at 606.

In his § 2255 motion, Rhodes maintained that his Oklahoma burglary convictions did not qualify as violent felonies under the enumerated offense clause because the elements of the state offense did not match the definition of generic burglary in light of *Mathis v. United States*, 136 S. Ct. 2243, 2251-54 (2016) (clarifying the approach for determining whether a prior conviction under a divisible state statute categorically meets the ACCA's definition of violent felony). Proceeding from the premise that his burglary convictions were not violent felonies under the enumerated offense clause, Rhodes claimed his sentence was illegally enhanced based on the residual clause. The Oklahoma district court dismissed the

3

motion as untimely, concluding that his argument relied on *Mathis*, not *Johnson*, and a *Mathis* claim was untimely.

We granted a COA, determined that the motion was timely because it invoked *Johnson*, but concluded that Rhodes' *Johnson* claim failed because his sentence was enhanced under the ACCA's enumerated offense clause, not its invalidated residual clause. *United States v. Rhodes*, 721 F. App'x 780, 782 (10th Cir. 2018) (*Rhodes III*). We noted that when Rhodes was sentenced, we "had repeatedly held that Oklahoma second degree burglary qualified as an enumerated offense if underlying documents indicated that the defendant burgled a building." *Id.* And because the sentencing record established that "Rhodes was convicted of burgling homes," we concluded "there would have been little dispute at the time of sentencing that Rhodes' burglary convictions constituted enumerated offenses." *Id.* (ellipsis and internal quotation marks omitted); *see United States v. Snyder,* 871 F.3d 1122, 1129 (10th Cir. 2017) (explaining that "it may be possible to determine that a sentencing court did not rely on the residual clause—even when the sentencing record alone is unclear—by looking to the relevant background legal environment at the time of sentencing" (emphasis and internal quotation marks omitted)). In so concluding, we expressed no opinion about whether our prior cases holding that Oklahoma second-degree burglary of a building qualified as an enumerated offense remain good law following *Mathis*, because *Mathis* was decided after Rhodes' sentencing hearing. *Rhodes III*, 721 F. App'x at 782 & n.2; *see Snyder*, 871 F.3d at 1129 (explaining that

4

"the relevant background legal environment" does not include "post-sentencing decisions").

### 3. Denial of Rhodes' Motion for Authorization to File a Second or Successive § 2255 Motion Based on *Mathis*

In 2019, Rhodes sought authorization from this court to file another successive § 2255 motion based, as pertinent here, on *Mathis* and *United States v. Hamilton*, 889 F.3d 688 (10th Cir. 2018), in which we held that Oklahoma second-degree burglary does not meet the definition of generic burglary under *Mathis* and thus does not qualify as a violent felony under the enumerated offense clause, *see id.* at 699. We denied authorization because *Mathis* was "dictated by decades of precedent" and was thus not a new rule, and *Hamilton*, a decision from this court not the Supreme Court, does not qualify as a new rule of retroactively applicable law under § 2255(h)(2). *In re Rhodes*, No. 19-6144, Order at 5 (10th Cir. Oct. 9, 2019) (*Rhodes IV*).

### 4. Illinois District Court Order Granting Rhodes' § 2241 Application

While the COA proceeding in *Rhodes IV* was pending, Rhodes filed a § 2241 habeas application in the United States District Court for the Southern District of Illinois (Illinois district court), where he was incarcerated. As in his 2016 § 2255 motion, Rhodes relied on *Mathis* to claim that his Oklahoma second-degree burglary convictions are not violent felonies under the enumerated offense clause and that his sentence was illegally enhanced under the residual clause.

5

After we decided *Rhodes IV*, the Illinois district court concluded that Rhodes could challenge his conviction and sentence under § 2241 because the remedy of § 2255 was inadequate or ineffective under Seventh Circuit precedent. The court (Judge Yandle) then granted Rhodes' § 2241 application, concluding that under *Mathis* and *Hamilton*, his Oklahoma second-degree burglary convictions could not support his ACCA enhancement and that he was "entitled to be resentenced free of the [ACCA] designation." R., Vol. 4 at 34. That order purported to vacate the sentence imposed by the Oklahoma district court, and to order that court to resentence Rhodes. *Id.*

### 5. Order Denying Motion for Immediate Release Pending Resentencing

Both parties filed motions in the Oklahoma district court addressing Judge Yandle's order: Rhodes moved for immediate release pending resentencing, and the government moved to strike the order from the docket and, if necessary, reinstate the original judgment and sentence. The Oklahoma district court denied both motions and declined to vacate Rhodes' sentence and resentence him. With respect to the motion for immediate release pending resentencing, the court held that "Judge Yandle lack[ed] the authority to order [the Oklahoma district court] to vacate Mr. Rhodes' sentence or his sentencing enhancement or to resentence him." *Id.* at 90. Likewise, with respect to the government's motion to strike Judge Yandle's order, the Oklahoma district court concluded it had no authority to strike an order of another district court. After the Oklahoma district court entered that order, Rhodes was released from custody pursuant to the Illinois district court's order. He now

6

appeals the portion of the Oklahoma district court's order refusing to vacate his sentence, which he has not fully served, and to resentence him.

## Discussion

Despite this somewhat complicated procedural background, the only issue before us is a straightforward jurisdictional one: did the Illinois district court have authority in its § 2241 order to vacate the sentence imposed by the Oklahoma district court and to order that court to resentence Rhodes? The answer is plainly no.

We review questions regarding a district court's jurisdiction under § 2241 de novo. *Abernathy v. Wandes*, 713 F.3d 538, 544, 557 (10th Cir. 2013). We apply the same standard in reviewing a district court's legal determination regarding its authority to modify a criminal defendant's sentence. *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996).

A § 2241 application "typically attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011) (internal quotation marks omitted). "A § 2255 motion, on the other hand, is generally the exclusive remedy for a federal prisoner seeking to attack the legality of detention, and must be filed in the district that imposed the sentence," regardless of where he is incarcerated. *Id.* (brackets and internal quotation marks omitted). Absent circumstances not present here, a prisoner is entitled to only one opportunity to challenge the legality of his sentence. *See* § 2255(h) (identifying circumstances in which a prisoner may seek authorization to file a second or successive § 2255 motion); *Prost v. Anderson*,

7

636 F.3d 578, 586 (10th Cir. 2011) ("[A] prisoner generally is entitled to only *one* . . . opportunity to test the legality of his detention, in his *initial* § 2255 motion."). Consistent with that filing limitation, the district court in the jurisdiction where a prisoner is incarcerated may not entertain a § 2241 habeas application challenging the underlying conviction and sentence unless the prisoner establishes under § 2255(e)'s savings clause that the remedy of a § 2255 motion "is inadequate or ineffective to test the legality of his detention." § 2255(e); *see Abernathy*, 713 F.3d at 557 (recognizing that the limitation in the savings clause is jurisdictional).

In this circuit, "[t]he relevant metric or measure" of § 2255's adequacy or effectiveness "is whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion. If the answer is yes, then the petitioner may not resort to the savings clause and § 2241." *Prost*, 636 F.3d at 584. Because the text of § 2255(e) distinguishes between remedy and relief, our test focuses on opportunity, not result: "it is the infirmity of the § 2255 remedy itself, not the failure to use it or to prevail under it, that is determinative. To invoke the savings clause, there must be something about the initial § 2255 procedure that *itself* is inadequate or ineffective for *testing* a challenge to detention." *Prost*, 636 F.3d at 589. We have rejected the notion that a defendant "should be excused for failing to bring a novel argument for relief that the Supreme Court hadn't yet approved" in his first § 2255 motion, because that failure "doesn't speak to the relevant question whether § 2255 *itself* provided him with an adequate and effective remedial mechanism for testing such an argument." *Id.* (internal quotation marks omitted); *see*

8

*also id.* at 586 (explaining that "if the § 2255 remedial mechanism could be deemed 'inadequate or ineffective' any time a petitioner is barred from raising a meritorious second or successive challenge," the filing limitation in § 2255(h) "would become a nullity").

Rhodes' § 2241 application challenged the validity of his sentence, not its execution. He sought release based on substantive law that post-dates the resolution of his initial § 2255 motion—new law that he claims makes it clear that his Oklahoma burglary convictions cannot support an enhanced sentence under the enumerated offense clause. His claim was thus a § 2255 claim. But Rhodes did not establish, nor could he, that "something about the initial § 2255 procedure [] *itself* [was] inadequate or ineffective for *testing*" his claim, and the fact that his argument would have been novel at that time does not mean he did not have the opportunity to raise it. *Prost*, 636 F.3d at 589. Thus, had Rhodes been incarcerated in Oklahoma and filed his § 2241 application in the Oklahoma district court, this court's precedent would have precluded relief.

This case is a perfect example of the practical problems district courts face in trying to provide § 2255 relief under § 2241 when the habeas court is not the sentencing court. We recognize that the Seventh Circuit's savings clause test would permit Rhodes to use § 2241 to obtain relief in these circumstances. *See Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019) (petitioner entitled to relief under § 2241 because challenging the use of his prior burglary convictions to enhance his sentence

9

under the enumerated clause would have been futile before *Mathis*).[1]  And we understand the quandary the Illinois district court faced given the conflict between its circuit's savings clause test and ours, let alone the fact that we have already concluded that Rhodes' sentence enhancement argument does not entitle him to file a second or successive § 2255 motion, *see Rhodes IV* at 5.

But even if the Illinois district court properly exercised jurisdiction over Rhodes' § 2241 application under the Seventh Circuit's savings clause test, it did not have jurisdiction to vacate his sentence.  While § 2241 gives a district judge the "power to release" a defendant confined in its district, a habeas court "has no other power," and "cannot revise the [underlying] judgment." *Fay v. Noia*, 372 U.S. 391, 430-31 (1963), *abrogated on other grounds by Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977); *see also In re Medley*, 134 U.S. 160, 173-74 (1890) (recognizing that a habeas court "cannot do anything else than discharge the prisoner from the wrongful confinement").  Nor did it have jurisdiction to order the sentencing court to resentence Rhodes.  The respondent in a § 2241 proceeding is the petitioner's jailer, not the court that sentenced him, and the only available remedies in habeas are those the jailer can effect, such as the prisoner's release or a relaxation of the conditions of his confinement. *See Braden v. 30th Jud. Circuit Court of Ky.*, 410 U.S. 484, 494-95

---

[1] The Seventh Circuit's savings clause test permits a federal prisoner to raise an alleged sentence-enhancement error under § 2241 if he "relies on a statutory-interpretation case" and "a retroactive decision that he could not have invoked in his first § 2255 motion," and the sentence enhancement is "a grave enough error to be deemed a miscarriage of justice." *Brown v. Caraway*, 719 F.3d 583, 586-87 (7th Cir. 2013) (internal quotation marks omitted).

(1973) (explaining that a writ of habeas corpus is directed to "the person who holds [the prisoner] in what is alleged to be unlawful custody," and provides relief by compelling the jailer "to release his constraint").

In any event, district courts in this circuit are bound by our decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts, much less district courts in other circuits. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (internal quotation marks omitted)). The Oklahoma district court was thus bound by our decision in *Rhodes IV* that Rhodes is not entitled to relief under § 2255 based on *Mathis* and *Hamilton*, not the Illinois district court's contrary decision. *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 2010) (explaining that if the circuit court decided an issue, "the district court was bound by its determination under the law of the case doctrine, and under the general rule that a district court is bound by decisions made by its circuit court" (citation omitted)). Accordingly, not only did the Illinois district court lack jurisdiction to vacate Rhodes' sentence and order the Oklahoma district court to resentence him, the Oklahoma district court lacked authority to follow the Illinois district court's order given our decision in *Rhodes IV*.

## Conclusion

The district court's order is affirmed. Rhodes' motion to proceed on appeal without prepayment of filing fees is granted, and he is reminded of his obligation to

11

continue making partial payments toward his appellate filing fee until the entire

balance is paid in full.  *See* 28 U.S.C. § 1915(b)(1)-(2).

Entered for the Court


Gregory A. Phillips
Circuit Judge